UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: CONCRETE AND CEMENT ADDITIVES ANTITRUST LITIGATION | |
| This documents Relates To:<br><br>ALL ACTIONS | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __5/11/2026__

24-md-3097 (LJL)

MEMORANDUM &
ORDER

LEWIS J. LIMAN, United States District Judge:

Former Defendant Compagnie De Saint-Gobain S.A. ("Saint-Gobain") moves to maintain under seal certain information, *see* Dkt. No. 428, included in the Direct Purchaser Plaintiffs' First Amended Consolidated Class Action Complaint ("FACCAC"), *see* Dkt. No. 339-1, and the Indirect Purchaser Plaintiffs' Corrected Second Amended Consolidated Class Action Complaint ("CSACCAC"), *see* Dkt. No. 339-2, as well as quotations from and reference to such materials in memoranda addressed to this Court.  In line with Saint-Gobain's request, Defendants and Plaintiffs in this case have also filed letter motions to maintain under seal their respective motions to dismiss, oppositions to those motions, and replies in further support of those motions pending resolution of Saint-Gobain's motion.  Dkt. Nos. 381, 416, 429.  The motions are denied.  The following docket numbers shall be unsealed: Dkt. Nos. 320, 326, 339, 377, 382, 385, 389, 394, 400, 420, 423, 430, 434, 437, 442.

Saint-Gobain was originally named as a defendant in this multi-district litigation alleging a price-fixing conspiracy.  On August 10, 2025, it reached a settlement with Plaintiffs which required it, among other things, to share information with Plaintiffs related to this case.  Dkt. No. 310-1 ¶ 14; Dkt. No. 312-2 ¶ 14.  Pursuant to that agreement, Saint-Gobain shared certain information with Plaintiffs that is quoted in the FACCAC and the CSACCAC.  Dkt. No. 338 at

1.  The information concerns communications among representatives of certain of the defendant companies in this case concerning price increases for the product at issue in this case in Spring 2021, Winter 2021/2022, and Spring 2022.

Saint-Gobain argues that the information should remain under seal for three reasons: (1) public disclosure could undermine one or more pending government investigations, Dkt. No. 338 at 2; (2) the redacted information includes "highly confidential and competitively sensitive information" about Saint-Gobain's business and pricing strategies, *id.*; and (3) "Saint-Gobain's ability to comply with its obligations under the French Blocking Statute outweighs the benefit of public disclosure," *id.* at 2–3; *see also* Dkt. No. 428 at 2–3.

There is a presumption of public access to judicial documents.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006); *Brown v. Maxwell*, 929 F.3d 41, 47–48 (2d Cir. 2019).  A judicial document is one "relevant to the performance of the judicial function and useful in the judicial process." *Brown*, 929 F.3d at 49 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)).  If a document is determined to be a judicial document, then the Court must assess the "weight of the presumption" of public access against any "countervailing factors." *Lugosch*, 435 F.3d at 119–20.

"[A]ll documents submitted in connection with, and relevant to, such judicial decision-making are subject to at least some presumption of public access." *Brown*, 929 F.3d at 50.  "[I]n discussing the continuum along which the strength of the presumption will be measured, . . . where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches." *Lugosch*, 435 F.3d at 121.  In other words, "[t]he weight will be strongest when the documents will 'directly affect an adjudication' of the merits and weakest when they will 'play only a negligible role.'" *Pauwels v. Bank of N.Y. Mellon Corp.*, 2025 WL 41199, at *1

(S.D.N.Y. Jan. 7, 2025) (quoting *Lugosch*, 435 F.3d at 121).  Pleadings are "'used to determine litigants' substantive legal rights[]' and therefore carr[y] a strong presumption of public access." *Junsub Shim v. Luxury Asset Cap., LLC*, 2025 WL 88041, at *1 (S.D.N.Y. Jan. 10, 2025) (quoting *Lugosch*, 435 F.3d at 121); *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) ("easily conclude[ing]" that "a complaint is a judicial document subject to a presumption of access"); *Nielson Consumer LLC v. Circana Grp., L.P.*, 2024 WL 3887152, at *2 (S.D.N.Y. Aug. 20, 2024) ("[T]here is a strong presumption of public access to an answer and counterclaims which are 'central to the determination of . . . substantive rights.'" (citation omitted)).  Court filings submitted in connection with motions to dismiss are likewise judicial documents to which a strong presumption of public access attaches. *See TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 208 (E.D.N.Y. 2024).

If a presumptive right of public access exists, "the proponent of [sealing] must establish through specific, on the record findings . . . that [sealing] is essential to preserve higher values and is narrowly tailored to serve that interest." *Courthouse News Serv. v. Corsones*, 131 F.4th 59, 67 (2d Cir. 2025) (citation and internal quotation marks omitted).  "Courts have found that higher values include protecting the confidentiality of grand jury proceedings, protecting minor victims of sex crimes, protecting a defendant's Sixth Amendment right to a fair trial, protecting significant and substantial privacy interests[,] . . . preventing danger to persons or property, and maintaining the integrity of significant activities entitled to confidentiality, such as ongoing undercover investigations or detection devices." *Id.* at 68–69 (citation and internal quotation marks omitted).  Materials submitted in connection with dispositive motions, including motions to dismiss, should not remain under seal absent the most compelling reasons. *Rowe v. Google LLC*, 2022 WL 4467628, at *1 (S.D.N.Y. Sept. 26, 2022).

The amended complaints at issue here and the dispositive motions to dismiss them are all judicial documents to which a strong presumption of public access attaches, and Saint-Gobain has failed to identify sufficiently weight countervailing interests to defeat that presumption.

First, the danger of impairing law enforcement is a countervailing factor supporting continued sealing, *see Lugosch*, 435 F.3d at 120, but Saint-Gobain offers no reason to believe that sealing is necessary to prevent the impairment of law-enforcement objectives. The only open investigation relevant to this case is by the European Commission. The other investigations that previously were opened have now been closed. And, as to the European Commission, the information in sealed form has been provided to the alleged subjects of that investigation—the Defendants in this case. Saint-Gobain has not identified any reason why the public must be denied access to the same information in order to satisfy law-enforcement interests.

In each of the cases cited by Saint-Gobain, the law-enforcement authorities themselves asserted that their interests would be impaired by public disclosures. *See United States v. Park*, 619 F. Supp. 2d 89, 94–95 (S.D.N.Y. 2009) (upholding redactions detailing an individual's cooperation with a government investigation to avoid revealing the identities of the investigation's targets and nature of the investigation); *United States v. Milken*, 780 F. Supp. 123, 127 (S.D.N.Y. 1991) (sealing "information from which the targets, subjects or status of a government investigation might be inferred"); *United States v. Smith*, 985 F. Supp. 2d 506, 545 (S.D.N.Y. 2013) (entering protective order proposed by the Government to shield "ongoing investigations into potentially serious criminal conduct that could be jeopardized by dissemination of the discovery"). Saint-Gobain has not cited a single case where a court has sealed information for law-enforcement reasons where law enforcement has not asked that the information be sealed. *Cf. Simmons v. Ferrigno*, 2023 WL 3713513, at *3 (W.D.N.Y. May 30,

4

2023) ("Courts in this Circuit have frequently refused to apply the law enforcement privilege . . . particularly where the party seeking sealing has failed to identify specific harms that might flow from disclosure.").

Second, while the protection of confidential commercial information and trade secrets may overcome the presumption of public access in some cases, *see, e.g., Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (summary order); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 510–11 (S.D.N.Y. 2015), Saint-Gobain has not demonstrated that such protection is necessary in this case. In determining whether such information is properly sealed, courts may look to whether "the information [is] still relevant to the business" and "the degree to which a party would be competitively harmed if [the information] were revealed." *Jackpocket, Inc. v. Lottomatrix NY LLC*, 2022 WL 17738779, at *2 (S.D.N.Y. Dec. 15, 2022) (citation and internal quotation marks omitted). Saint-Gobain has not demonstrated how the conversations quoted in the pleadings regarding discussions among competitors about price increases in the 2021/2022 time period are still relevant to its business. More important perhaps, it has not demonstrated any competitive harm that would befall it if the information that was disclosed to its competitors by Plaintiffs' pleadings in these cases were also disclosed to members of the public at large. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 2021 WL 4135007, at *4 n.3 (S.D.N.Y. Sept. 10, 2021) ("[T]o justify sealing business information, a party must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." (citation and internal quotation marks omitted)).

Finally, Saint-Gobain relies on the French blocking statute. That statute prevents the transfer of certain information from France to the United States for use in litigation. *See* Thomas Rouhette & Ela Barda, *The French Blocking Statute and Cross-Border Discovery*, 84 Def. Couns. J. 1, 2 (2017); *see also Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 526 n.6 (1987). It does not prevent a party in the United States from sharing information that was produced to it in the United States with other parties in the United States. Saint-Gobain does not claim that Plaintiffs violated the French blocking statute by including the information in the pleadings in this case. It would have understood that the reason why it was sharing such information was for use in this litigation. Dkt. Nos. 310-1 ¶ 14(d) (stating that the information disclosed pursuant to the Settlement Agreement "shall be used by Plaintiff solely in connection with the prosecution of the Action"); Dkt. No. 312-2 ¶ 14 (same). It has not identified any affront to French sovereign interests if the information is also shared with the United States public pursuant to the strong presumption of public access that exists in this country.

The Clerk of Court is respectfully directed to close Dkt. Nos. 318, 338, 339, 377, 381, 416, 428, 429, and 446 and to unseal Dkt. Nos. 320, 326, 339, 377, 382, 385, 389, 394, 400, 420, 423, 430, 434, 437, 442.

SO ORDERED.

Dated: May 11, 2026
        New York, New York          _____
                                         LEWIS J. LIMAN
                                    United States District Judge

6